650 So.2d 890 (1994)
LaRue ESTILL
v.
ALABAMA STATE TENURE COMMISSION.
AV92000221.
Court of Civil Appeals of Alabama.
June 10, 1994.
Rehearing Denied July 29, 1994.
Certiorari Denied October 28, 1994.
*891 Edward Still, Birmingham, for appellant.
Phillip A. Laird of Laird & Wiley, P.C., Jasper, and Jean B. Brown, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1931574.
ROBERTSON, Presiding Judge.
On July 5, 1991, the Walker County Board of Education (Board) sent, by certified mail, a notice to LaRue Estill of its intent to transfer her from her teaching position at Cordova High School, where she taught math courses of algebra and trigonometry, to Bankhead Middle School, where she was to teach seventh and eighth grade math. On July 8, 1991, Estill responded by sending a letter to the Board, requesting a hearing to contest the transfer. A hearing was held on July 30, 1991, and the Board voted unanimously to uphold the transfer. Estill then filed an appeal with the Alabama State Tenure Commission (Commission). The Commission affirmed the decision of the Board to transfer Estill. Estill sought judicial review pursuant to § 16-24-38, Ala.Code 1975, in the Walker County Circuit Court, where summary judgment was entered for the Commission. Estill appeals to this court.
Our scope of appellate review is the same as that of the circuit court. Alabama State Tenure Comm'n v. Conecuh County Bd. of Educ., 495 So.2d 1105 (Ala.Civ.App. 1985), cert. quashed, 495 So.2d 1108 (Ala. 1986). The Commission's decision will not be reversed unless procedural requirements were not properly complied with or unless its judgment is so contrary to the preponderance and weight of the evidence as to be unjust. County Bd. of Educ. of Shelby County v. Alabama State Tenure Comm'n, 392 So.2d 842 (Ala.Civ.App.1980), cert. denied, 392 So.2d 844 (Ala.1981).
Estill contends that the Board violated procedural requirements by notifying her after July 1, 1991, of its intent to transfer her for the 1991-92 "school term." In addressing this issue, we must ascertain the legislative intent of the notice requirement of § 16-24-5, Ala.Code 1975. That section provides that "[a]ny teacher on continuing service status... may be transferred for any succeeding year from one position, school or grade to another by being given written notice of such intention to transfer...."
It is fundamental that notice must be given before the beginning of the "succeeding year." Otherwise, notice would be given during the "present year" of an intent to transfer during that same year. Estill contends that the most logical date to choose as the beginning of the "succeeding year," as set out in § 16-24-5, is July 1, which is the beginning of the succeeding "scholastic year." § 16-1-1(4), Ala.Code 1975.
The Teacher Tenure Act, §§ 16-24-1, et seq., Ala.Code 1975, uses the terms "succeeding school year" and "school term" in § 16-24-2; "succeeding year" in § 16-24-4; "succeeding year" in § 16-24-5; "school term" in § 16-24-11; "succeeding school year" and "term of the school" in § 16-24-12; and "school year" in § 16-24-13. In reading these statutes, it becomes obvious that the legislature had different definitions for "school year" and "school term." This is probably best exemplified in § 16-24-12, wherein a teacher "shall be deemed offered reemployment for the succeeding school year... unless the employing board ... shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed; and such teacher shall be presumed to have accepted such employment unless ..." the board is notified in writing to the contrary by June 15. § 16-24-12, Ala.Code 1975 (emphasis *892 added). Such acceptance of employment on June 15 subjects the teacher to the sanctions (revocation or suspension of teaching certificate) imposed by § 16-24-11 for canceling his or her contract during the school term or within 45 days before the beginning of such school term. It seems logical that the legislature, after giving a teacher from the last day of the school term until June 15 to notify the board to the contrary or to have accepted the employment for the succeeding school year, would then give the employing board until June 30, the end of the present scholastic year, to give that teacher written notice of its intent to transfer him or her from one position, school, or grade to another for the succeeding year.
"Generally, when a statute speaks of a year, twelve calendar ... months are intended." Black's Law Dictionary 1615 (6th ed.1990). We must give words their natural and ordinary meaning in ascertaining legislative intent, and a court is bound to interpret language to mean exactly what it says. IMED Corp. v. Sys. Eng'g Assocs. Corp., 602 So.2d 344 (Ala.1992). We find that if the legislature had intended that a "succeeding year" mean something less than twelve calendar months[1], i.e., "school term," then § 16-24-5 would have read "succeeding school term" instead of "succeeding year." When the statutory language is clear and unambiguous, there is no room for judicial construction. Parker v. Hilliard, 567 So.2d 1343 (Ala.1990).
We find the definition of "succeeding year" in § 16-24-5 to be the same as "succeeding scholastic year." We hold, therefore, that notice must be given before July 1 in order to comply with the procedural requirements of § 16-24-5. By defining "succeeding year," as read in § 16-24-5, to mean the "succeeding scholastic year," we give it a definition that will not vary from teacher to teacher or from system to system.
During oral argument of this case, it was pointed out that school terms vary, with some schools operating on a year-round basis.[2] It was also pointed out that school teachers are hired/employed on a seasonal basis, more so than other professions. If a teacher is given the choice of either accepting an undesirable transfer one or two days before the school term begins or finding another teaching job, that teacher's real choice is whether to accept the transfer or to be without a teaching job. If notice of a transfer is given before the succeeding scholastic year, July 1, a teacher has a reasonable chance to find another teaching position and not be forced to either accept an undesirable transfer or be without a teaching job. This court has stated: "This notice puts the teacher on actual notice that a change in the employment situation is contemplated by the board and thus gives the teacher an opportunity to acquiesce to the change, seek other employment, or challenge the board's action." Wright v. Marengo County Bd. of Educ., 367 So.2d 501, 502 (Ala.Civ.App.1979) (citations omitted). This certainly could not be done if the teacher was given notice only a day or two before the school term begins.[3]
This court held in Haymes v. Alabama State Tenure Comm'n, 627 So.2d 464 (Ala. Civ.App.1993), that sufficient notice had been given if the Board notified the teacher of its intent to transfer prior to the beginning of the succeeding "school term." Our supreme court denied certiorari review in that case, and the term "succeeding year" has never been directly addressed by that court. Haymes was not orally argued before this court. I concurred in the majority's opinion *893 in Haymes; however, after a careful study of the Teacher Tenure Act and because of the potential hardships of allowing the Board to give notice of intent to transfer up to the beginning of a school term, I am convinced that that was not the legislative intent. We, therefore, overrule Haymes inasmuch as it conflicts with the decision in this case. This issue was also before this court in Alabama State Tenure Comm'n and Velma Avery v. Bd. of Educ. of Jefferson County, 418 So.2d 111 (Ala.Civ.App.1981), cert. quashed, 418 So.2d 113 (Ala.1982), and Wright, supra. We note that Avery and Wright can be distinguished from Haymes and the present case. In Avery, notice was given after the school term had already begun and was held to be untimely. In Wright, notice was given before July 1 and was clearly timely.
The Commission's decision in this matter is due to be reversed because the Board failed to comply with the statutory procedure of giving notice.[4] Consequently, the judgment of the trial court is due to be reversed, and this case is remanded for the entry of a judgment granting Estill's requested relief.
REVERSED AND REMANDED WITH DIRECTIONS.
YATES, J., concurs.
THIGPEN, J., concurs in the result.
THIGPEN, Judge, concurring in the result.
Although I concur with the majority in the result of this opinion, I continue to have concerns as expressed in my special concurrence in Haymes, supra. I also note that Haymes involved notification of intent to transfer given in August 1991, and we affirmed the trial court's judgment in favor of the Commission; however, this case involves notification given in July 1991, and we are reversing the trial court's judgment in favor of the Commission. Because of this and because of the possibility of other pending cases which were decided in reliance upon prior holdings of this court, I would apply this decision prospectively from the date of this opinion.
NOTES
[1] While not a decisive factor in this case, we note that the Alabama Senate, in Senate Bill No. 75, 1994 Regular Session, defined scholastic or school year to be the same, i.e., July 1 to June 30 of each year. When statutes are amended, these subsequent acts must be considered in determining legislative intent. McWhorter v. State ex rel. Baxley, 359 So.2d 769 (Ala.1978). This senate bill, however, did not become an act.
[2] We note that The Birmingham News/Saturday/Birmingham Post-Herald reported on May 14, 1994, that the Jefferson County School Board approved a 12-month study to determine if it should convert to year-round classes. The same article reported that a year-round school program (Vincent) was already in effect in Shelby County.
[3] Also, as noted in oral argument, teachers attend workshops and prepare lesson plans during July and August for the courses they are scheduled to teach during the school term.
[4] The record reflects (Board Exhibit "12") that the Board had adopted a policy in 1977 or 1978 which read: "Written notice of transfer shall be given the teachers by June 30 for the succeeding year...." On June 20, 1991, the Board temporarily changed that policy to: "Written notice shall be given ... in accordance with state law for the summer of 1991 regarding transfers for the 1992 school year. This is a temporary deletion for the 1991-92 school year." Obviously, the Board had previously interpreted § 16-24-5 to require notice to be given before the beginning of the succeeding scholastic year, which we now hold was a correct interpretation.